IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

JULIE HARRIS,

        Plaintiff,

vs.                                     **Case No. 08-4143-RDR**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

**MEMORANDUM AND ORDER**

      This is an action to review a final decision by the Commissioner of Social Security regarding plaintiff's entitlement to disability insurance benefits and supplemental security income (SSI) benefits under the Social Security Act. The parties have briefed the relevant issues and the court is now prepared to rule.

I.

      Plaintiff filed an application for disability benefits on March 15, 2006 and an application for SSI benefits on March 30, 2007. In both applications, she alleged her disability began on January 31, 2006. The applications were denied by the Social Security Administration(SSA). A hearing was ultimately conducted by an administrative law judge (ALJ) on plaintiff's applications. On March 19, 2008, the ALJ determined in a written opinion that plaintiff was not entitled to disability or SSI benefits. On September 26, 2008, the Appeals Council of the SSA denied plaintiff's request for review. Thus, the decision of the ALJ

stands as the final decision of the Commissioner.

II.

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Fowler v. Bowen, 876 F.2d 1451, 1453 (10th Cir. 1989) (quotations omitted).

The Commissioner follows a five-step sequential evaluation process to determine whether a claimant is disabled. See Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing process). The claimant bears the burden of establishing a prima facie case of disability at steps one through four. See id. at 751 n. 2. If the claimant successfully meets this burden, the burden of proof shifts to the Commissioner at step five to show that the claimant retains a sufficient residual functional capacity (RFC) to perform work in the national economy, given her age, education and work experience. See id. at 751.

III.

Plaintiff was born on March 21, 1965. Plaintiff is a college graduate with a degree in computer information systems. She has previously worked as a skip tracer clerk, customer service representative, bookkeeper and secretary. She was last employed on

January 31, 2006.

The medical evidence shows that plaintiff suffers from a variety of ailments. In the last few years, she has received treatment for pain in her shoulder, back and hands. She has been diagnosed with morbid obesity, fibromyalgia, diabetes, headaches, arthritis, hypertension, carpal tunnel and sleep apnea. She has been prescribed physical therapy and several medical devices for treatment. She also takes a variety of medications for these problems.

At the hearing before the ALJ, plaintiff stated that she was 6 feet tall and was "down to" 350 pounds. She indicated that her worst problem was "low back pain." She said that this pain prevents her from sitting or standing for very long. She also indicated that she suffers from pain and numbness in her hands. She also mentioned problems with diabetes and fibromyalgia. She stated that she takes a number of medications, most of them for pain. She said that the pain medication does interfere with her concentration. She also indicated that she continues to have trouble sleeping. She noted that one of her doctors wanted to do surgery on her left arm but decided against it because of her weight. She said she was in the process of losing weight through diet and exercise. She is able to take care of her basic needs, can drive sometimes, and does her grocery shopping. She does use a cane to help her get around.

Robert Karsh, M.D., testified at the hearing as a medical expert. Dr. Karsh noted that the medical evidence showed the following: mild carpal tunnel, negative neck x-rays with mild osteoarthritis of her lumbar spine with narrowing at the L5-S1 interspace due to osteoarthritis, left shoulder problem which shows some degeneration at the convicular joint and a partial tear of the infraspendous tendon, some obstructive sleep apnea, mild diastolic dysfunction of the heart and a mild increase of pulmonary blood pressure and tennis elbow. He noted that plaintiff takes several medications and received several injections for her complaints of pain. He failed to find that her impairments, either individually or jointly, met any of the requirements for a listed impairment. Dr. Karsh opined that plaintiff could occasionally lift or carry 10 pounds and could stand or walk two hours in an eight-hour day and sit six hours in an eight-hour day. He noted that she had postural limitations due to her back problems. He indicated that balancing, stopping, kneeling and crawling could only be done occasionally. He further noted that the following activities were not limited: manipulation, vision and communication. He determined that she should avoid concentrated exposure to vibration, heat, cold and wetness. He further found that she should avoid even moderate exposure to hazardous machinery.

Marianne Lumpe, a vocational expert, also provided testimony at the hearing. She noted plaintiff's past employment as a skip

tracer clerk, customer service representative and bookkeeper. Ms. Lumpe indicated that plaintiff could perform her past relevant work as a skip tracer clerk and bookkeeper. She further noted that she could perform sedentary work as a surveillance system monitor and food and beverage order clerk.

The ALJ concluded that plaintiff did not suffer from a listed impairment, but that she did have the following severe impairments: "morbid obesity; history of fibromyalgia; history of sleep apnea; history of adhesive capsulitis in the left shoulder; tendonitis in the left shoulder; history of tendonitis in the right heel and plantar fascitis; and status post right shoulder surgery." She determined that plaintiff had the functional capacity to do the following: "lift and/or carry a maximum of 10 pounds frequently; stand and/or walk for up to 2 hours total in an 8-hour workday; and sit for up to 6 hours total in an 8-hour workday; but with nonexertional occasional climbing, balancing, stooping, kneeling, crouching or crawling, no working on ladders, ropes or scaffolding, avoiding concentrated exposure to heat, cold, wetness, vibration, and avoiding concentrated exposure to hazardous machinery but driving is allowed." She further determined that the plaintiff was capable of performing past relevant work as either a skip tracer or an accounts receivable/accounts payable clerk. Accordingly, she concluded that plaintiff was not disabled from January 31, 2006 through the date of her decision.

IV.

Plaintiff raises only one argument concerning the ALJ's decision. She argues that the ALJ failed to consider her obesity in evaluating her impairments in steps three and four of the sequential evaluation process. Her argument is based upon Social Security Ruling (SSR) 02-01p. She contends that the ALJ erroneously failed to consider her obesity in combination with her other impairments. She further asserts that the Tenth Circuit's unpublished decision in Hamby v. Astrue, 260 Fed.Appx. 108 (10th Cir. 2008) provides support for her contention.

SSR 02-01p states that obesity is a medically determinable impairment that an ALJ must consider in evaluating disability, that the combined effects of obesity and other impairments can be greater than the effects of each single impairment considered individually, and that obesity must be considered when assessing RFC. While Social Security Rulings are not binding authority, they are nevertheless entitled to deference, unless plainly erroneous or inconsistent with the Social Security Act as the Rulings do represent the agency's interpretations of its own regulations and the statute which it administers. Walker v. Secretary of Health & Human Services, 943 F.2d 1257, 1259-60 (10th Cir. 1991).

The ALJ made no mention of SSR 02-01p in her decision and did not explicitly examine the impact of plaintiff's obesity on each of plaintiff's impairments. However, the ALJ did clearly consider

6

plaintiff's obesity. She made the following comments concerning plaintiff's obesity:

> As for her morbid obesity, the claimant was listed at 5 feet 10 inches tall with a weight of 355 pounds at the time of the consultative physical examination by Dr. Veloor on February 14, 2007. The claimant testified that she was down to 350 pounds at the time of the hearing, and that she is 6 feet tall. On May 4, 2006, one of her orthopedic surgeons, Jeffrey C. Randall, M.D., stated that the claimant was not "a good operative candidate given her size and her weight of 380 pounds" with respect to her left shoulder adhesive capsulitis.

The ALJ further found that her obesity constituted a severe impairment under step two. She then discussed the evidence and analyzed all of the plaintiff's severe impairments, determining that they, either individually or jointly, did not render plaintiff disabled at step three.

Social Security Ruling 02-01p does not mandate a particular mode of analysis, but merely directs an ALJ to consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation. The ALJ acknowledged that plaintiff was obese and that her obesity was a severe impairment. The ALJ then considered all of plaintiff's impairments and concluded that she was not disabled at step four. The court believes that the ALJ adequately considered plaintiff's obesity.

The court finds that this case is more akin to the Tenth Circuit's unpublished decision in <u>Fagan v. Astrue</u>, 231 Fed.Appx. 835 (10th Cir. 2007) than <u>Hamby</u>. In <u>Fagan</u>, the Tenth Circuit determined that the ALJ had not erred in failing to explicitly

7

examine the impact of the claimant's obesity on each of her impairments. The Tenth Circuit stated:

> Although the ALJ did not reference SSR 02-01p or explicitly examine the impact of Ms. Fagan's obesity on each of her (non-severe) impairments, we have reviewed the record and do not believe these omissions require a remand under the facts of this case. The ALJ discussed the evidence and why he found Ms. Fagan not disabled at step three and, the claimant-upon whom the burden rests at step three-has failed to do more than suggest that the ALJ should have speculated about the impact her obesity may have on her other impairments, however, specifically prohibits adjudicators from engaging in such speculation:
>> [W]e will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record.
>
> Further, in assessing Ms. Fagan's RFC the ALJ imposed postural limitations and limited her to light and sedentary work consistent with the reviewing state agency's physician's assessment, which assessment was apparently predicated on Ms. Fagan's "obesity," her history of PCOS, and her treating physicians' records reflecting pelvic pain.

231 Fed.Appx. at 837-38 (citations omitted).

V.

In sum, the court finds no merit to the plaintiff's arguments. The court finds that the ALJ's decision is supported by substantial evidence. Accordingly, the decision of the Commissioner is affirmed.

**IT IS SO ORDERED.** Dated this 24th day of February, 2010 at Topeka, Kansas.

s/Richard D. Rogers
United States District Judge